1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7   S. T.,                              Case No. 24-cv-07721-SVK

8            Plaintiff,                 **ORDER REVERSING-IN-PART AND**
                                        **AFFIRMING-IN-PART THE**
9        v.                             **COMMISSIONER'S DECISION;**
                                        **REMANDING CASE**
10  COMMISSIONER OF SOCIAL
    SECURITY,                           Re: Dkt. Nos. 15, 17
11
             Defendant.
12
            Plaintiff appeals from the final decision of the Defendant Commissioner of Social Security,

13  which denied her application for disability insurance benefits.  The Parties have consented to the

14  jurisdiction of a magistrate judge.  Dkts. 9-10.  For the reasons discussed below, the Court

15  **REVERSES-IN-PART** and **AFFIRMS-IN-PART** the decision of the Commissioner and

16  **REMANDS** the case for further proceedings.

17  **I.      BACKGROUND**

18          On or about March 7, 2022, Plaintiff completed an application for a period of disability

19  and disability insurance benefits.  *See* Dkts. 14–14-8 (Administrative Record ("AR")) 190-191.

20  Plaintiff's claim was denied initially on July 15, 2022 (AR 67) and denied on reconsideration on

21  December 1, 2022 (AR 88).  On November 2, 2023, an Administrative Law Judge ("ALJ") held a

22  telephonic hearing.  AR 27-58.  On December 15, 2023, the ALJ issued an unfavorable decision

23  finding Plaintiff was not disabled.  AR 7-22 (the "ALJ Decision").

24          In applying the sequential evaluation process for determining disability, as relevant to this

25  case, at step two, the ALJ found that Plaintiff has the following severe impairments: lumbar

26  degenerative disc disease, degenerative joint disease, obesity and depression.  AR 13.[1]  At step

27

28  _____

    [1] At step three, the ALJ found that none of Plaintiff's impairments or combinations thereof met or

---

*United States District Court*
*Northern District of California*

1    four, discounting some of the medical source opinions and Plaintiff's pain-and-symptom

2    testimony, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform

3    light work with certain limitations – including that she "must alternate position between sitting

4    and standing at 30-minute intervals while remaining on task."  AR 15-20.  The ALJ also found

5    that Plaintiff could not perform any of her relevant past work, (AR 21), but that, considering

6    Plaintiff's age, education, work experience and RFC, Plaintiff could perform other jobs that exist

7    in significant numbers in the national economy such as mail clerk, office helper and routing clerk,

8    (AR 21).  The ALJ thus found that Plaintiff was not under a disability, as defined by the Social

9    Security Act, from December 9, 2020 through the date of the ALJ Decision.  AR 21-22.

10        The Appeals Council subsequently denied review of the ALJ Decision.  AR 1-6.  Plaintiff

11    timely filed an action in this District seeking review of the ALJ Decision.  Dkt. 1.  In accordance

12    with the Federal Rules of Civil Procedure Supplemental Rules for Social Security Actions, the

13    Parties have presented the action for decision on the briefs.  Dkt. 15 ("Pl. Br.");  Dkt. 17

14    ("Comm'r. Br.");  Dkt. 18 ("Reply"); *see* Fed. R. Civ. P. Supp. SS Rule 5.  The action is now

15    ready for decision without oral argument.

16    **II.    ISSUES FOR REVIEW**

17        1.  Did the ALJ properly address Plaintiff's allegations of pain and dysfunction?

18        2.  Did the ALJ properly address the medical opinion evidence of:

19            a.  The consultive psychologist Lauri Stenbeck, Psy.D.?

20            b.  The consulting internal medicine doctor Satish Sharma, M.D.?

21            c.  Plaintiff's physician, Timothy Ong, M.D.?

22        3.  Did the ALJ properly resolve inconsistencies, if any, between the vocational expert's

23            ("VE") testimony and the Dictionary of Occupational Titles ("DOT") in determining

24            that Plaintiff was able to perform a significant number of jobs in the national economy?

25    ////

26    ////

27

28    equaled the severity of a listing.  AR 14.  This finding is not at issue in this case.

United States District Court
Northern District of California

2

III.    **STANDARD OF REVIEW**

This Court is authorized to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492.

The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id*. at 492. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up and citations omitted); *see also Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence" means "more than a mere scintilla" but "less than a preponderance;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," (internal quotation marks and citations omitted)). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds*, 807 F.3d at 1002. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id*.

However, in cases where "a claimant's symptom testimony is discredited," the Ninth Circuit has "established a two-step analysis" that the ALJ must engage in. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. Second, if "the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Trevizo*, 871 F.3d

United States District Court
Northern District of California

1    at 678.  At the same time, "[t]he standard isn't whether [this Court] is convinced, but instead

2    whether the ALJ's rationale is clear enough that it has the power to convince."  *Smartt v. Kijakazi*,

3    53 F.4th 489, 499 (9th Cir. 2022).  This standard thus "requires an ALJ to show his work."  *Id.*

4        Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is

5    harmless.  *Brown-Hunter*, 806 F.3d at 492.  "An error is harmless … if despite the legal error, the

6    agency's path may reasonably be discerned."  *Id.* at 494 (internal citations and quotations

7    omitted).

8    **IV.    DISCUSSION**

9        **A.    Issue One: Whether the ALJ Properly Discounted Plaintiff's Allegations of
10              Pain and Dysfunction**

11       Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons for

12   discounting Plaintiff's allegations of pain and dysfunction.  Pl. Br. at 3.  At issue here,[2] Plaintiff

13   testified regarding her chronic pain in her lower back, which especially limited her ability to walk,

14   stand or sit up for long periods of time, reach and lift more than 5 pounds.  *Id.*;  *see also* AR 39-

15   42, 48-51 (*e.g.*, testifying that she could only "do dishes for a few minutes at a time," that when

16   folding launder she would "alternate standing and sitting[,] … like five to ten minutes," and that

17   "she "can stand for about … 15 to 20 minutes" at a time.").  The Commissioner counters that the

18   ALJ properly discounted Plaintiff's testimony as being "inconsistent with the objective medical

19   evidence and evidence that Plaintiff improved with treatment."  Comm'r. Br. at 2.

20       **1.    The ALJ Committed Legal Error**

21       In following the "two-step analysis" for evaluating a claimant's subjective testimony, the

22   ALJ determined at step one that "claimant's medically determinable impairments could reasonable

23   be expected to cause the alleged symptoms."  AR 16.  However, the ALJ rejected the "intensity,

24   persistence and limiting effects of th[e] symptoms" at step two as "not entirely consistent with the

26   ───────────────
27   [2] As the Commissioner points out, although Plaintiff testified as to neck, knee and foot pain, as
     well as mental impairments, Plaintiff has only challenged the ALJ's discounting of her "chronic
28   lower back pain, which limited her ability to walk, stand, lift, reach, and concentrate."  *See*
     Comm'r. Br. at 2 n. 4;  Pl. Br. at 3.  Accordingly, the Court does not address the ALJ's Decision
     as it relates to the other alleged impairments.

United States District Court
Northern District of California

medical evidence and other evidence in the record." *Id.*  In explaining how the testimony was "not entirely consistent," Plaintiff argues that "the ALJ relied exclusively on objective medical findings" contrary to law.  Pl. Br. at 4-5 (citing, among other authorities, *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005));  Reply at 2 (same).  The Commissioner responds that the ALJ properly relied on objective medical evidence and that "the ALJ in fact also cited to improvement with treatment."  Comm'r. Br. at 2.

The law is more nuanced than Plaintiff argues.  As the Ninth Circuit explains:

> Claimants … sometimes mischaracterize *Burch* as completely forbidding an ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony. That is a misreading of *Burch.*  When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.

*Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).  *Burch* holds that an ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence" fully corroborating Plaintiff's testimony.  *Id.* (explaining *Burch*, 400 F. 3d at 681).  However, the Commissioner is also incorrect in his reading of the ALJ Decision, which improperly demands positive objective medical evidence fully corroborating Plaintiff's testimony.

The ALJ Decision uses the boilerplate phrase "not entirely consistent" to describe Plaintiff's testimony as to intensity.  AR 16.  But while "ALJs routinely use the phrase 'not entirely consistent' the same way the ALJ did here, [] that usage does not always mean 'inconsistent.'"  *Vidal N. v. O'Malley*, No. 8:22-CV-01878-SK, 2024 WL 3529051, at *3 (C.D. Cal. June 4, 2024) (citing *Smartt*, 53 F.4th at 499 n.2).  This "generalized reference to an inconsistency is not enough to identify an actual inconsistency between objective medical evidence and [Plaintiff's] testimony, which the ALJ did not do."  *Sukach v. O'Malley*, No. 24-cv-00026-MWJS (WRP), 2024 WL 4565916, at *5 (D. Haw. Oct. 24, 2024) (citing same).

Here, examining the actual "inconsistency" pointed to by the ALJ, the ALJ merely characterizes Plaintiff's testimony as "inconsistent because evidence tends to indicate less significant objective findings during the period at issue."   The ALJ fails to explain how these

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1   "less significant objective findings" are inconsistent with Plaintiff's testimony.  AR 16-17.  That

2   is, despite citing to a variety of objective medical evidence, including inferred[3] evidence of some

3   improvement in Plaintiff's condition, none of the evidence cited by the ALJ is *inconsistent* with

4   Plaintiff's testimony as to the reported severity of her symptoms.  *See* AR 16-17.  Rather, the

5   ALJ's rationale appears to be that these "less significant objective findings" of medical conditions

6   were insufficient to support Plaintiff's testimony.  AR 16-17.[4]  In a striking example, the ALJ

7   apparently credited Plaintiff's testimony that she needed to "alternate standing and sitting" when

8   doing tasks such as folding laundry or cleaning dishes—ultimately including a requirement that

9   Plaintiff "must alternate position between sitting and standing at 30-minute intervals while

10  remaining on task" in her RFC—yet discounted Plaintiff's testimony that she could only stand for

11  "five to ten minutes" or "15 to 20 minutes" before needing to sit or lie down.  *Compare* AR 15-17

12  *with* 40-41, 49.  The ALJ failed to explain why the "less significant" 2022 objective medical

13  evidence of, *e.g.*, "multilevel degenerative disc disease" was consistent with a 30-minute

14  alternation requirement but not a 20-minute alternation requirement.  AR 16-17.

15         Accordingly, the ALJ's explanation that the objective findings were "less significant" than

16  Plaintiff's testimony, without any explanation as to how Plaintiff's testimony was inconsistent

17  with these findings, "is not an appropriate basis for rejecting symptom testimony.  As the Ninth

18  Circuit explains, 'it is the very nature of excess pain to be out of proportion to the medical

19  evidence.'"  *Sukach*, 2024 WL 4565916, at *5.  "When, as here, the ALJ identifies no

20

21  [3] In her reply, Plaintiff explains persuasively why "the ALJ's finding of improvement was not
    based upon Plaintiff's *reported* improvement with treatment[,] … [but was based on] infer[enc]
22  solely based on the objective medical evidence."  Reply at 1-2 (emphasis added).

23  [4] As explained by other courts in this Circuit, this boilerplate language results in "awkward and
    imprecise phrasing [that] creates two recurring problems in Social Security cases.  For one,
24  claimants 'commonly confuse this phrasing with the ALJ improperly concluding that a claimant's
    symptom testimony was not "fully corroborated" by the objective medical evidence,' when the
25  ALJ meant—and the record showed—that the testimony was in fact 'inconsistent' with that
    evidence.  On the other hand, this phrasing can lead to reversible error, as it does here, by
26  confounding a reviewing court's ability to tell the difference between impermissible and
    permissible reasons."  *Vidal N.*, 2024 WL 3529051, at *3 (quoting *Smartt*, 53 F.4th at 499 n.2).
27  As in *Vidal*, the Court here is unable to discern the *precise* rationale of the ALJ given the
    boilerplate language.  "So, it merits repeating that 'ALJs might consider replacing the phrase "not
28  entirely consistent" with simply "inconsistent"'—if that is the intended meaning justified by the
    record."  *Id.*

                                             6

*inconsistency* between the objective medical data and a claimant's subjective symptom testimony, it is not appropriate for the ALJ to reject the testimony solely because the objective medical data do not *support* the claimant's testimony." *Id.* (internal citations omitted). Thus, the ALJ erred. *Burch*, 400 F.3d at 680-81.

### 2.    The Error Was Not Harmless

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. "An error is harmless only if it is inconsequential to the ultimate nondisability determination … or if despite the legal error, the agency's path may reasonably be discerned." *Id.* at 494 (internal citations and quotations omitted). Here, the ALJ's error was not harmless. In particular, discounting Plaintiff's pain and dysfunction testimony as to her lower back pain resulted in the ALJ determining that Plaintiff could "alternate position between sitting and standing at 30-minute intervals while remaining on task," rather than the roughly 10 or 20 minutes testified to by Plaintiff, (*compare* AR 15 *with* AR 41, 48).[5]

The ALJ then applied this erroneous RFC, relying on VE testimony, to determine that jobs existed in significant numbers in the national economy that Plaintiff could perform. AR 21-22, 54-55 (VE testifying that, "at 30 minute intervals," the jobs of Mail Clerk, General Office Helper and Routing Clerk were available). Critically, when the ALJ asked, "does that mean that if it was 20 minutes, that the jobs would not be available?" the VE responded: "That's correct, Your Honor." *Id.* Accordingly, if the RFC included a requirement that Plaintiff be allowed to alternate position between standing and sitting at 20 minute or more frequent intervals, the jobs ultimately relied upon by the ALJ would not have been available. *See* AR 20-21.

Thus, the ALJ's discounting of Plaintiff's testimony was not "inconsequential to the ultimate nondisability determination." *Brown-Hunter*, 806 F.3d at 492. However, neither the ALJ nor Plaintiff's attorney elicited any testimony about whether other jobs would be available for

---

[5] The ALJ also determined, in relevant part, that Plaintiff can "stand or walk up to four hours total, and sit for up to six hours total." AR 15. While such a limitation is arguably related to Plaintiff's chronic lower back pain, the record and Plaintiff's argument make clear that the more stringent 2-hour limitation on standing is based on Dr. Sharma's opinion, not Plaintiff's testimony. *See, e.g.*, Pl. Br. at 10; *see also generally* AR 29-51 (Plaintiff's testimony).

United States District Court
Northern District of California

1    someone who, otherwise having Plaintiff's RFC, needed to alternate position every 20 minutes.

2    The Court must thus **REVERSE** the decision of the ALJ on this ground and **REMAND** for

3    further fact finding with an RFC consistent with Plaintiff's subjective testimony.

4    **B.    Issue Two:  Did the ALJ Properly Address the Medical Opinion Evidence**

5    Next, Plaintiff argues that the ALJ failed to properly evaluate the medical source opinions

6    of three doctors:  psychological consultive examiner, Lauri Stenbeck, Psy.D., consulting internal

7    medicine doctor Satish Sharma, M.D. and plaintiff's physician, Timothy Ong, M.D.  Pl. Br. at 6-

8    14.  Under current regulations, "an ALJ cannot reject an examining or treating doctor's opinion as

9    unsupported or inconsistent without providing an explanation supported by substantial evidence."

10   *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  The ALJ must "'articulate ... how

11   persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source, and

12   'explain how [he or she] considered the supportability and consistency factors' in reaching these

13   findings." *Id.* (quoting 20 C.F.R. § 404.1520c(b)).  )).  "Supportability means the extent to which

14   a medical source supports the medical opinion by explaining the relevant ... objective medical

15   evidence." *Id.* at 792-93 (internal quotations and citations omitted).  "Consistency means the

16   extent to which a medical opinion is consistent ... with the evidence from other medical sources

17   and nonmedical sources in the claim."  *Id.* (same).  The Court addresses each doctor, in turn.

18   **1.    The ALJ Did Not Properly Account for the Opinions of Dr. Stenbeck**

19   With regard to Dr. Stenbeck, neither Plaintiff nor the Commissioner take issue with the

20   ALJ's account of the persuasiveness opinion.  *See* Pl. Br. at 7;  Comm'r. Br. at 4.  Rather,

21   Plaintiff's contention is that, "despite apparently crediting Dr. Stenbeck's assessment of moderate

22   mental limitations, the ALJ formulated a []RFC[] that omitted many of the limitations identified

23   by the examining psychologist." Pl. Br. at 7-9.  Specifically, Plaintiff contends that two

24   limitations should have been included in the RFC:  (a) Plaintiff's "moderate limitations interacting

25   with coworkers and the public[] and … accepting instructions [and criticism] from supervisors,"

26   (Pl. Br. at 7 (citing AR 469) (emphasis omitted));  and (b) "any restrictions in Plaintiff's [ability]

27   in maintaining attendance or … completing a normal workday/workweek without interruptions

28   from her psychological condition," (*id.* at 8).  In relevant part, the ALJ included in her opinion

United States District Court
Northern District of California

8

only that Plaintiff could "understand, remember, and maintain attention, concentration, and pace for simple tasks; can have occasional contact with the public and coworkers; can make simple decisions; and can adapt to occasional changes consistent with simple tasks."  AR 15.

Plaintiff argues (1) that limitations to "occasional contact with the public and coworkers" and to "simple" tasks, decisions, and occasional changes do not adequately address the "moderate" severity of Plaintiff's impairments and (2) that, even if they properly addressed severity, they do not adequately address Plaintiff's difficulty in interacting with *supervisors* nor Plaintiff's difficulties in completing a normal workday or workweek without interruptions.  Pl. Br. at 7-9. The Commissioner responds that Dr. Stenbeck's use of the term "moderate" was without "any specifics about Plaintiff's ability to maintain attendance, complete a workday, accept instructions from supervisors" and the limitations included by the ALJ were appropriate.  Comm'r. Br. at 4-5.

As to Plaintiff's first argument, the Court by the Commissioner that, absent an indication that Dr. Stenbeck was using the word "moderate" in some specialized way, it should be presumed that she "used the word consistent with the SSA's definition, which describes an individual with a 'moderate limitation' in an area as someone whose 'functioning in th[at] area independently, appropriately, effectively, and on a sustained basis is fair.'"  Comm'r. Br. at 4-5 (citing various cases and quoting 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(F)(2)(c)).  Thus, the ALJ's limitations fairly account for the substance of the "moderate" severity of Dr. Stenbeck's opinions. *Compare, e.g.*, AR 15 *with* AR 469 (*e.g.*, limiting Plaintiff to "occasional" interaction with coworkers fairly accounts for Dr. Stenbeck's finding that Plaintiff, due to her depression, may "isolate and avoid others.").

As to Plaintiff's second argument, however, the Commissioner is incorrect.  Even if it is not clear, as Commissioner argues, "how the 'moderate' limitations should be translated," (Comm'r. Br. at 4), no amount of "translation" can fill the gaps in the ALJ's RFC determination. The ALJ failed to include any restrictions on Plaintiff's interactions with supervisors, such as restrictions on the duration or frequency of such interactions or on the sort of criticism Plaintiff could receive, and the ALJ failed to include any restrictions accounting for Plaintiff's limitations in maintain attendance or completing a normal workday/workweek without interruptions, such as

United States District Court
Northern District of California

1    by permitting additional breaks.  *Compare* AR 15 *with* AR 468-69, Points 3, 6, 7 (limitations on

2    workweek attendance, workday/workweek interruptions and interactions with supervisors,

3    respectively);  *see also Palleschi v. Colvin*, No. 15-cv-4204 JC, 2016 WL 7261400, at *5 (C.D.

4    Cal. Dec. 15, 2016) (concluding that an RFC accounting for limitations on interactions with

5    coworkers did not "properly account[] for plaintiff's moderate limitation in her ability to interact

6    with *supervisors*," and explaining that "Social Security regulations treat the ability[y] to respond

7    appropriately to 'supervision'" as separate from the ability "to get along with 'coworkers.'");  *G.F.*

8    *v. Dudek*, No. 24-cv-06077-SVK, 2025 WL 1303956, at *4 (N.D. Cal. May 6, 2025) (explaining

9    that a plaintiff's "moderate limitation on his ability to complete a normal workday/workweek

10   without interruption … [is] distinct from [a] finding[] that he 'can carry out simple instructions

11   and can deal with occasional changes in a routine work setting.'").  Thus, the ALJ erred in failing

12   to account for the "supervisor" and "workday/workweek" limitations identified by Dr. Stenbeck.

13          Additionally, this error was not harmless.  After failing to account for these limitations in

14   determining Plaintiff's RFC, the ALJ proceeded to apply this erroneous RFC relying on VE

15   testimony, to determine that jobs existed in significant numbers in the national economy that

16   Plaintiff could perform.  AR 21-22, 54-56.  In particular, as Plaintiff argues, the VE was asked

17   whether a hypothetical claimant who "would need to take a minimum of two additional breaks in a

18   work day … for 20 minutes each" would have any jobs available to them, and the VE answered:

19   "there would be no jobs available in the national economy."  AR 55-56.  However, because neither

20   the ALJ nor Plaintiff's attorney elicited any testimony about whether jobs would remain available

21   if Plaintiff had to take shorter breaks or fewer breaks,[6] nor was the VE asked about the effect of

22   supervisor-based restrictions on the availability of jobs, it is again "not clear from the record that

23   the ALJ would be required to find the claimant disabled if all the evidence were properly

24   evaluated."  *Luther v. Berryhill*, 891 F.3d 872, 877 (9th Cir. 2018).  Accordingly, the Court

25   **REVERSES** and **REMANDS** the decision of the ALJ on this ground.

26

27   _____

28   [6] Dr. Stenbeck's opinion may or may not require Plaintiff to have the opportunity for additional
     breaks;  whether it does, and the length of such breaks, are all properly returned for the ALJ's
     consideration on remand.

United States District Court
Northern District of California

### 2.    The ALJ Properly Addressed the Opinions of Dr. Sharma

As for the medical opinions of consulting internal medicine doctor, Dr. Sharma, Plaintiff challenges the ALJ's finding that Dr. Sharma's "standing and waking limitations" were not persuasive.  Pl. Br. at 10;  *see* AR 17-18.  The Commissioner disagrees.  Comm'r. Br. at 5-6.

The Parties' disagreement here comes down to Dr. Sharma's October, 2022 examination of Plaintiff.  As Plaintiff argues, and as the ALJ acknowledged, Dr. Sharma observed in October, 2022 that Plaintiff had "a limping gait."  AR 17.  This "arguably supported" Dr. Sharma's opinion. *Id.*  But the ALJ nonetheless found the opinion unpersuasive, because (a) as to supportability, "this was an isolated observation" and (b) as to consistency, other "physical examinations generally noted normal gait" and that Plaintiff did not use an assistive device.  AR 17-18;  *see also* AR 453 (January 14, 2020, normal gait);  AR 443 (March 10, 2020, same);  AR 357 (May 2, 2022, same).

The ALJ did not err in discounting this opinion of Dr. Sharma.  As to consistency, while Plaintiff may argue that developing a limp in October 2022 is consistent with normal gait in 2020 and in May, 2022, the ALJ's finding of inconsistency—particularly in light of the May, 2022 examination—is supported by substantial evidence.  Similarly, as to supportability, the ALJ's finding that Dr. Sharma's opinion was only "arguably supported" by her own examination is just that:  arguable.  It is possible to view Dr. Sharma's opinion either as sufficiently supported or not. But if "the evidence is susceptible to more than one rational interpretation," this Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Rounds*, 807 F.3d at 1002.  Here, the ALJ assessed the available medical evidence in considering the supportability and consistency of Dr. Lewis' opinion and came to the rational interpretation that Dr. Sharma's opinion was ultimately unsupported.  On such a record, the Court finds there was substantial evidence from which the ALJ adequately explained his discounting of Dr. Sharma's opinion as to the standing and walking limitations.  Thus, the ALJ did not err.

### 3.    The ALJ Failed to Address All of the Opinions of Dr. Ong

Finally, with regard to the opinions of Plaintiff's physician, Dr. Ong, Plaintiff argues that "the ALJ did not evaluate or provide any rationale for discounting [many of the] mental work restrictions assessed by Dr. Ong," pointing to twelve of Dr. Ong's opinions that went unaddressed.

United States District Court
Northern District of California

1    Pl. Br. at 13.  The Commissioner responds only that "the ALJ was not required to incorporate

2    these moderate limitations into the RFC or explain why she found them unpersuasive."  Comm'r.

3    Br. at 7.  The Commissioner is incorrect.

4        It is well-established that the ALJ "must articulate how persuasive it finds *all* of the

5    medical opinions from *each* doctor or other source."  *Woods*, 32 F.4th at 792 (9th Cir. 2022)

6    (citing 20 C.F.R. § 404.1520c(b)) (cleaned up) (emphasis added).  The Commissioner cites no

7    authority to the contrary.  Comm'r. Br. at 7.  Accordingly, by failing to address twelve of Dr.

8    Ong's opinions, the ALJ has committed legal error.

9        However, even in such a case, this Court must evaluate whether this error was harmless.

10    *Brown-Hunter*, 806 F.3d at 492.  "An error is harmless … if despite the legal error, the agency's

11    path may reasonably be discerned."  *Id.* at 494 (internal citations and quotations omitted).  For

12    example, if the moderate mental limitations identified by Dr. Ong overlapped with those identified

13    by Dr. Stenbeck and were ultimately accounted for in the RFC, the Court could discern the

14    agency's path and the error would be harmless.  In evaluating the twelve opinions of Dr. Ong that

15    went unaddressed, the Court finds that, in some cases, it can reasonably discern the ALJ's path:

16        Point 2:  This opinion does not clearly overlap with Dr. Stenbeck's opinions and is not

17            clearly accounted for in the RFC.

18        Point 3:  This opinion overlaps with point 2 of Dr. Stenbeck's opinions and is accounted

19            for in the RFC by the ALJ's limitation regarding simple tasks.

20        Point 4:  This opinion does not clearly overlap with Dr. Stenbeck's opinions but is

21            nonetheless accounted for in the RFC by the ALJ's limitation to "simple decisions."

22        Point 6:  This opinion overlaps with point 4 of Dr. Stenbeck's opinions and is accounted

23            for in the RFC by the ALJ's limitation regarding simple tasks.

24        Point 11:  This opinion partially overlaps with points 7 and 9 of Dr. Stenbeck's opinions

25            and is accounted for in the RFC by the ALJ's limitation to only occasional changes.

26        Point 13:  This opinion partially overlaps with points 6-8 of Dr. Stenbeck's opinions and is

27            accounted for in the RFC by the ALJ's limitation regarding simple decisions and only

28            occasional interactions with coworkers and the public.

1    Point 14:  This opinion does not clearly overlap with Dr. Stenbeck's opinions and is not

2         clearly accounted for in the RFC.

3    Point 15:  This opinion partially overlaps with point 5 of Dr. Stenbeck's opinions and is

4         accounted for in the RFC by the ALJ's limitation to simple tasks and decisions.

5    Point 17:  This opinion does not clearly overlap with Dr. Stenbeck's opinions but is

6         nonetheless accounted for in the RFC by the ALJ's limitation that Plaintiff "must avoid

7         exposure to hazards such as operation of heavy machinery with fast moving parts or

8         work at unprotected heights."

9    Point 18:  This opinion overlaps with points 2, 5 and 8 of Dr. Stenbeck's opinions and is

10        accounted for in the RFC by the ALJ's limitation regarding simple tasks, simple

11        decisions and only occasional interaction with coworkers and the public.

12   Point 20:  This opinion overlaps with point 8 of Dr. Stenbeck's opinions and is accounted

13        for in the RFC by the ALJ's limitation to only occasional interaction with coworkers

14        and the public.

15   Point 22:  Same as point 20, above.

16   *Compare* AR 479-80 (Dr. Ong) *with* AR 468-69 (Dr. Stenbeck) *and* AR 15 (RFC).  Indeed, in

17   some of these cases, where a limitation appears in Dr. Ong's opinions but not in Dr. Stenbeck's

18   opinions and yet appears accounted for in the RFC (for example, Point 17, above), the ALJ may

19   have implicitly found Dr. Ong's opinions persuasive.

20        Accordingly, the Court **REVERSES** the decision of the ALJ on this ground but, finding

21   some of the errors to be harmless, **REMANDS only** for consideration of Dr. Ong's limitations on

22   Points 2 ("the ability to recognize a mistake and correct it or identify and solve problems") and 14

23   ("the ability to set realistic goals"), above.

24        **C.    Issue Three:  Plaintiff's Challenge to the ALJ's Reliance on VE Testimony
              Without Proper Explanation of Purported Conflicts with the DOT is Moot**

25        Finally, separately from any errors arising out of issues 1-2 and the resulting RFC

26   determinations, Plaintiff challenges the ALJ's reliance on the VE's testimony for failing to resolve

27   perceived inconsistencies between the testimony and the DOT.  Pl. Br. at 14-17.  Plaintiff argues

28

United States District Court
Northern District of California

that the VE's testimony conflicted with the DOT for all three occupations at issue:  (1) mail clerk, (DOT 209.687-026, 1991 WL 671813);  (2) office helper, (DOT 239-567-010, 1991 WL 672232); and (3) routing clerk (DOT 222.687-022, 1991 WL 672133).  However, because the Court has found determined that new VE testimony will be required, (*see, supra*, §§ IV.A.2, IV.B.1), these challenges are thus moot.  So, the Court **DENIES as moot** Plaintiff's challenge on this ground.

## V.    CONCLUSION

For the forgoing reasons, the Court **REVERSES IN PART** the ALJ's Decision.  The Court **REVERSES**:  (a) the ALJ's decision to discount Plaintiff's pain and dysfunction testimony **regarding her chronic pain in her lower back** as it relates to her ability to walk, stand or sit up for long periods of time, reach and lift more than 5 pounds, including how often she must alternate between standing and sitting;  (b) the ALJ's failure to account for the limitations identified by Dr. Stenbeck in Plaintiff's (i) interactions with supervisors and (ii) ability to complete a normal workday/workweek without interruption;  and (c) the ALJ's failure to address or account for the limitations identified by Dr. Ong in Plaintiff's abilities to (i) recognize and correct mistakes and solve problems and (ii) set realistic goals.  *See, supra*, §§ IV.A., IV.B.1., IV.B.2.  Accordingly, the Court **REVERSES** the resulting RFC determinations and **REMANDS** for further proceedings in accordance with this order.

**SO ORDERED.**

Dated: July 14, 2025

Susan van Keulen

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

14